UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

HUDSON NEUROSURGERY, PLLC, *et al.*,

                       Plaintiffs,

   v.

UMR, INC.,

                      Defendant.

No. 20-CV-9642 (KMK)

<u>OPINION & ORDER</u>

---

<u>Appearances</u>:

Richard A. Hochhauser, Esq.
Law Office of Richard Hochhauser, PLLC
Garden City, NY
*Counsel for Plaintiffs*

Michael H. Bernstein, Esq.
Matthew P. Mazzola, Esq.
Robinson & Cole LLP
New York, NY
*Counsel for Defendant*

KENNETH M. KARAS, United States District Judge:

      Hudson Neurosurgery, PLLC ("Hudson") and Yvonne Dixon ("Dixon" and collectively, "Plaintiffs") bring claims against UMR, Inc. ("UMR" or "Defendant") for breach of contract and unjust enrichment based on allegations that Defendant declined to pay for an emergency surgery that Hudson performed on Dixon.  (*See generally* Third Am. Compl. ("TAC") (Dkt. No. 36).)  Before the Court is Defendant's Rule 12(b)(6) Motion To Dismiss Plaintiffs' Third Amended Complaint (the "Motion").  (*See* Not. of Mot. (Dkt. No. 53).)  For the following reasons, Defendant's Motion is granted.

<u>I.  Background</u>

The Court assumes the Parties' familiarity with the facts and the procedural history of this case, as described in *Hudson Neurosurgery, PLLC v. UMR, Inc.*, No. 20-CV-9642, 2022 WL 902107 (S.D.N.Y. Mar. 28, 2022).  The Court will therefore recount only the background information necessary to resolve the instant Motion.

<u>A.  Factual Background</u>

The Third Amended Complaint contains many similarities to the Second Amended Complaint except that it adds new allegations, removes Plaintiffs' claims for negligence, and pleads unjust enrichment only as to Hudson.  (*Compare* TAC, *with* Second Am. Compl. (Dkt. No. 19).)

Plaintiffs' core allegations remain the same: Dixon received emergency back surgery from Hudson.  (TAC ¶¶ 10–11.)  Hudson submitted a claim to UMR—Dixon's insurance administrator—for $709,341.00, the total cost of the surgery.  (*Id*. ¶ 15.)  UMR, through its agent, offered to pay $223,072.70 in full satisfaction of the claim.  (*Id*. ¶ 17.)  But UMR ultimately paid only $40,484.55 for the services rendered and declined to pay the remaining balance.  (*Id*. ¶ 19.)

Plaintiffs' new allegations fall into two categories: (1) additional facts related to Dixon's contract with Defendant, (*id*. ¶¶ 23–44); and (2) facts related to Hudson's obligation to provide the emergency services underlying this case, (*id*. ¶¶ 46–70).  Unless otherwise stated, these new allegations are taken from the TAC and are assumed true for the purposes of resolving the instant Motion.

First, as to Dixon's contract: Dixon receives healthcare through a benefit plan administered by UMR (the "Plan").  (*Id*. ¶ 6.)  "UMR is compensated to administer the [P]lan," (*id*. ¶ 23), and is "obligated to comply with the terms of the Plan as it relates to Dixon," (*id*.

¶ 26). Those terms are "set forth in the Summary Plan Description for the County of Westchester Group Health Benefit Plan." (*Id*. ¶ 21; *id*. Ex. A ("Plan Agreement") (Dkt. No. 36-1).) UMR's compensation is paid from "premiums paid into the [P]lan fund" and "is partially determined by a percentage of savings" that it passes on to the fund "by reducing payments to providers." (TAC ¶¶ 23–24, 60, 61.)

The Plan Agreement covers 100% of fees for in-network surgical services, including services performed by an "emergency room physician" at an in-network hospital. (*Id*. ¶¶ 27–28.) It also covers 80% of allowable post-deductible fees for out-of-network inpatient surgical services. (*Id*. ¶ 33.)

The Plan provides an appeal process in the event UMR declines a claim under either provision:

> If a Covered Person disagrees with the denial of a claim or a rescission of coverage determination, the Covered Person or his or her Personal Representative may request that the Plan review its initial determination by submitting a written request to the Plan as described below. An appeal filed by a Provider on the Covered Person's behalf is not considered an appeal under the Plan unless the Provider is a Personal Representative.
>
> First Level of Appeal**:** This is a mandatory appeal level. The Covered Person must exhaust the following internal procedures before taking any outside legal action.
>
> (1) The Covered Person must file the appeal within 180 days of the date he or she received the EOB form from the Plan showing that the claim was denied . . . .

(Plan Agreement at 104–05.) Relevant here, a "Covered Person is an [e]mployee . . . who is covered under [the] Plan," (*id*. at 113); a "Provider" includes "any legally licensed Physician," (*id*. at 119); and a "Personal Representative means a person (or Provider) who may contact the Plan on the Covered Person's behalf," (*id*. at 100.) If someone chooses to interface with the Plan through a Personal Representative, however, they "must submit proper documentation" detailing

the representative's name, "the date and duration of the appointment," and certain other information. (*Id*. at 101.)

After UMR declined to cover Hudson's fees under either the in- or out-of-network provisions, Hudson "filed several appeals to UMR" "on its own behalf and on behalf of Dixon." (TAC ¶ 43.) Dixon alleges that her claim still has not been satisfied, as required by the Plan Agreement, and seeks damages of $849,097.00. (*Id*. ¶ 44.)

Second, as to Hudson's obligations: Hudson "did not have a written contract with UMR" that established a "rate of payment for Hudson's services." (*Id*. ¶ 46.) Hudson asserts, however, that it was required "under state and federal law" to provide treatment to individuals with emergency medical conditions, (*id*. ¶ 48), and that UMR was required to pay Hudson "for the reasonable value of the services [it] provided," (*id*. ¶¶ 65–67).[1]

Based on the provisions in the Plan Agreement, Hudson alleges "UMR deprived [it] of property – money – that [Hudson] should have been paid" and that the "money had already been paid to the Plan" through Dixon's premiums. (*Id*. ¶ 59.) Moreover, by "reducing the amount paid to providers, like Hudson," UMR stood to collect on a percentage of savings to the Plan as a "benefit." (*Id*. ¶¶ 61, 65.) Hudson seeks the "reasonable value of the [s]ervices"— $668,856.00—in damages. (*Id*. ¶ 70.)

---

[1] Plaintiffs support this allegation by citing to the Emergency Medical Treatment and Labor Act ("EMTALA"), the New York Public Health Law, and to associated court decisions. (TAC ¶¶ 48–51, 56, 57). This Court is "not bound to accept as true a legal conclusion couched as a factual allegation," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)), and therefore does not assume that the cited authorities apply to the Parties in this case.

B.  Procedural History

The Court dismissed Plaintiffs' Second Amended Complaint without prejudice in an Opinion dated March 28, 2022.  (Dkt. No. 35.)  Plaintiffs filed their Third Amended Complaint on April 27, 2022.  (Dkt. No. 36.)

On June 29, 2022, Defendant filed a pre-motion letter in anticipation of filing a motion to dismiss the TAC.  (*See* Dkt. Nos. 43, 43-1.)  Following Plaintiffs' response to Defendant's pre-motion letter, (Dkt. No. 44), the Parties requested time to consider settlement, (*see* Letter Mot. for Leave to file Mot. To Dismiss (Dkt. No. 49)), after which this Court set a briefing schedule (*see id.*; Order (Dkt. No. 50)).

After receiving an extension, (Dkt. No. 52), Defendant filed the instant Motion on October 7, 2022.  (Not. of Mot.; Def's Mem. of Law in Supp. of Mot. ("Def's Mem.") (Dkt. No. 55).)  Plaintiffs filed their Opposition on November 7, 2022, (Mem. of Law in Opp'n to Mot. To Dismiss ("Pls' Opp.") (Dkt. No. 56)), and, after two more extensions, (*see* Dkt. Nos. 58, 60), Defendant filed its Reply on December 7, 2022, (Def's Reply Mem. of Law ("Def's Reply") (Dkt. No. 61)).

## II.  Discussion

A.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a Rule 12(b)(6) motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration and quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint suffice if it tenders naked assertions devoid of

further factual enhancement." *Id.* (alteration and quotation marks omitted). Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his] claim[ ] across the line from conceivable to plausible, the[ ] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " (second alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), and "draw all reasonable inferences in the plaintiff's favor," *Division 1181*, 9 F.4th at 95 (citation omitted). Additionally, "when ruling on a Rule 12(b)(6) motion to dismiss," district courts are directed to confine their consideration to "the complaint in its entirety, . . . documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Bellin v. Zucker*, 6 F.4th 463, 473 (2d Cir. 2021) (quotation marks omitted); *see also Dashnau v. Unilever Mfg. (US), Inc.*, 529 F. Supp. 3d 235, 240 (S.D.N.Y. 2021) (same).

6

B.  Analysis

1.  Breach of Contract

"To succeed on a claim for breach of contract under New York law, a plaintiff must demonstrate '(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages.'"  *Roelcke v. Zip Aviation, LLC*, 571 F. Supp. 3d 214, 229 (S.D.N.Y. 2021) (quoting *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co*., 375 F.3d 168, 177 (2d Cir. 2004)).

Dixon alleges that UMR breached the Plan Agreement by failing to pay the required portion of Hudson's services.  (TAC ¶¶ 29–31, 39–40.)[2]  Defendant argues that Dixon failed to satisfy a condition precedent under the contract requiring her to pursue an administrative appeal before bringing suit.  (Def's Mem. 7–11.)  Dixon responds that the appeal condition is not enforceable, and alternatively that she substantially complied with it because Hudson submitted appeals on her behalf.  (Pls' Opp. 4–7.)  This Court must therefore determine whether the contract contains an enforceable condition precedent and, if so, whether Hudson's appeals excused her failure to comply.

"The parties' intent is the driver of contract formation, such that if either party communicates an intent not to be bound [until some specified event,] no amount of negotiation or oral agreement to specific terms will result in formation of a binding contract."  *Garra v. Metro-N. Commuter R.R.*, No. 17-CV-1293, 2021 WL 1536499, at *7 (S.D.N.Y. Feb. 12,

---

[2] For the purposes of this Opinion, the Court accepts as true Plaintiff's allegation that the Parties "agreed to [be] bound" by the Plan Agreement and its terms.  (*See* TAC ¶ 21.)  Although the Parties' prior briefing raised questions about whether "the [Plan Agreement] constitutes [a] contract between Dixon and UMR," *see Hudson Neurosurgery*, 2022 WL 902107 at *4, the TAC alleges UMR is obligated under the Plan, (TAC ¶¶ 21, 26), and Defendant does not argue that anything in the contract itself contradicts that statement, (*see generally* Def's Mem).

2021) (citation and quotation marks omitted).  Accordingly, the parties to a contract can "condition the performance of either party, or the validity of the entire contract itself, on the occurrence of an event." *Goldstein v. Solucorp Indus., Ltd.*, No. 11-CV-6227, 2017 WL 1078739, at *5 (S.D.N.Y. Feb. 10, 2017), *report and recommendation adopted*, 2017 WL 1067792 (S.D.N.Y. Mar. 21, 2017); *see also Kortright Cap. Partners LP v. Investcorp Inv. Advisers Ltd.*, 327 F. Supp. 3d 673, 680 (S.D.N.Y. 2018) (explaining that "no contract arises unless and until the condition [precedent] occurs"); *Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co.*, 660 N.E.2d 415, 418 (N.Y. 1995) (defining a condition precedent as "an act or event, other than a lapse of time, which, unless the condition is excused, must occur before a duty to perform a promise in the agreement arises").

That said, "[c]onditions [precedent] are not favored under New York law, and in the absence of unambiguous language, a condition [precedent] will not be read into the agreement." *CBRE, Inc. v. Pace Gallery of N.Y., Inc.*, No. 17-CV-2452, 2021 WL 1198644, at *6 (S.D.N.Y. Mar. 30, 2021) (second and third alterations in original), *reconsideration denied*, 2022 WL 683744 (S.D.N.Y. Mar. 8, 2022).  Unambiguous language indicating a condition precedent can include the terms "on condition that," "provided that," "if," "unless and until," or "null and void." *Id.* (citing *Su Mei, Inc. v. Kudo*, 755 N.Y.S.2d 481, 483 (App. Div. 2003)); *see also Garcia v. Dezba Asset Recovery, Inc.*, —F. Supp. 3d—, 2023 WL 2691756, at *5 (S.D.N.Y. Mar. 29, 2023) (noting "[p]arties often use language such as 'if,' 'on condition that,' 'provided that,' 'in the event that,' and 'subject to' . . . but other words may suffice" (quoting 2 E. Allan Farnsworth, Farnsworth on Contracts § 8.2 (3d ed. 2004)).

Here, the Plan "Appeals Procedure," which is annexed to the TAC, provides:

> If a Covered Person disagrees with the denial of a claim or a rescission of coverage determination, the Covered Person or his or her Personal Representative may request that the Plan review its initial determination . . . .  An appeal filed by a

Provider on the Covered Person's behalf is not considered an appeal under the Plan unless the Provider is a Personal Representative.

First Level of Appeal**:** This is a mandatory appeal level. The Covered Person must exhaust the following internal procedures before taking any outside legal action.

(1) The Covered Person must file the appeal within 180 days of the date he or she received the EOB form from the Plan showing that the claim was denied . . . .

(Plan Agreement at 105).

According to Defendant, this provision creates a condition precedent to Plaintiff brining suit. (Def's Mem. 8.) Although the Appeal Procedure lacks traditional "language of condition" like "if" or "unless and until," *Oppenheimer & Co.*, 660 N.E.2d at 418, "specific, talismanic words are not required," if the contract is otherwise "expressed in unmistakable language," *Bank of New York Mellon Trust. Co. v. Morgan Stanley Mortgage Capital, Inc*., 821 F.3d 297, 305 (2d Cir. 2016). Here, the clear import of Appeal Procedure is that a "Covered Individual" (here, Dixon) may bring suit only if she/he files an appeal first. *See Travelers Cas. & Sur. Co. of Am. v. Silo City Phase I LLC*, No. 22-CV-416, 2023 WL 2848709, at *2 (W.D.N.Y. Feb. 17, 2023), *report and recommendation adopted*, 2023 WL 2815729 (W.D.N.Y. Apr. 5, 2023) (explaining that dispute resolution language requiring a request for mediation "be made *prior to* the filing of binding [ ] proceedings" would constitute a condition precedent (emphasis in original)). Indeed, there is little ambiguity about the necessity of exhausting the appeal process: "The Covered Person *must* exhaust the [appeal process] before taking any outside legal action." (Plan Agreement at 105.) The Plan agreement is likewise clear that an appeal by a "Provider" (like Hudson) will not suffice. (*See id*.)

Dixon appears to concede that the Appeal Procedure is "a precondition to suit," (Pls' Opp. 5), and that she did not satisfy it. Indeed, she alleges that only Hudson filed appeals with UMR but does not allege that Hudson served as her "Personal Representative," a person who

9

must be specifically appointed pursuant Plan procedures.  (*See* TAC ¶ 43; Plan Agreement at 100–01; *see also* Pls' Opp. 5–6 ("Hudson was submitting the appeal on behalf of Ms. Dixon").)  And although Plaintiff urges the Court to "narrowly construe[] [this language] against the insurer," she does not provide an alternative to Defendant's interpretation or argue that the Appeal Procedure is anything besides a contractually mandated "precondition."  (Pls' Opp. 5.)  There is thus "no dispute that [P]laintiff failed to comply with the contractual dispute resolution procedures, and that compliance was a condition precedent to commencing a lawsuit."  *See D & M Concrete, Inc. v. Wegmans Food Markets, Inc.*, 20 N.Y.S.3d 801, 802 (App. Div. 2015); *see also Acme Supply Co. v. City of New York*, 834 N.Y.S.2d 142, 143 (App. Div. 2007) (reversing summary judgment for the plaintiff and finding the case "should have been dismissed because [the] plaintiff failed to comply fully with the contractual dispute resolution procedure").

Dixon instead argues—quite confusingly—that she is not bound by the Appeal Procedure because she did not assent to all the Plan Agreement's terms.  (Pls' Opp. 5.)  To start, Dixon has alleged no "facts suggesting lack of mutual assent" nor has she alleged any "facts concerning the competence of the parties."  *See NSI Int'l, Inc. v. Mustafa*, No. 12-CV-5528, 2014 WL 1232941, at *3 (E.D.N.Y. Mar. 26, 2014), *aff'd*, 613 F. App'x 84 (2d Cir. 2015).  And paradoxically, she is suing to enforce the very same agreement she argues she did not assent to.  Taken at face value, this argument is reason to dismiss Dixon's breach of contract claim outright.  *See Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 427 (2d Cir. 2004) ("[M]utual assent is essential to the formation of a contract and a party cannot be held to have contracted if there was no assent or acceptance." (quotation marks omitted)).  Assuming Plaintiff intends to enforce the Plan Agreement, the Court considers her other arguments in turn.

Dixon alternatively argues that she substantially complied with the condition and that her de minimis deviation from the Plan Agreement should be excused to avoid forfeiture of her claim. (Pls' Opp. 5–6.) But under New York law, the doctrine of "substantial compliance" generally cannot be employed "as a means of reducing the risk of forfeiture . . . if 'the occurrence of the event as a condition is expressed in unmistakable language.'" *Oppenheimer*, 660 N.E.2d. at 418–19 (quoting Restatement (Second) of Contracts § 229 and citing *id*. § 227, cmt. *b* ("[F]reedom of contract requires that, within broad limits, the agreement of the parties should be honored even though forfeiture results.")). Instead, "failure to strictly comply" with an "[e]xpress condition[] precedent . . . generally constitutes waiver of a claim." *Schindler Elevator Corp. v. Tully Const. Co*., 30 N.Y.S.3d 707, 709 (App. Div. 2016) (alteration and quotation marks omitted) (quoting *Rifenburg Const., Inc. v. State*, 935 N.Y.S.2d 406, 407 (App. Div. 2011)); *see also Peter Scalamandre & Sons, Inc. v. FC 80 Dekalb Assocs*., LLC, 12 N.Y.S.3d 133, 136 (App. Div. 2015) ("Where a . . . contract contains 'a condition precedent-type notice provision setting forth the consequences of a failure to strictly comply,' strict compliance will be required." (quoting *Northgate Elec. Corp. v. Barr & Barr, Inc*., 877 N.Y.S.2d 36, 37 (App. Div. 2009))).

A court may excuse noncompliance "to the extent that the non-occurrence of a condition would cause disproportionate forfeiture." *Oppenheimer*, 660 N.E.2d. at 691 (internal quotation marks omitted). But that limited exception does not apply here. Indeed, while Plaintiff attempts to distinguish various cases requiring strict compliance with conditions precedent, (*see* Pls' Opp. 6–7), she does not explain why "the significance of [her] default is grievously out of proportion to the oppression of the forfeiture," *see Jacob & Youngs v. Kent*, 129 N.E. 889, 891 (N.Y. 1921) (explaining that, without such proof, "there is no occasion to mitigate the rigor of implied

conditions").[3]  Accordingly, Dixon has not alleged that she has satisfied a precondition to brining

suit and, because there is no "basis for applying the doctrine of substantial performance,"

*Oppenheimer*, 660 N.E.2d. at 692, her claim for breach of contract is dismissed.

### 2.  Unjust Enrichment

"The basic elements of an unjust enrichment claim in New York require proof that (1)

defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate

against permitting defendant to retain what plaintiff is seeking to recover."  *Briarpatch Ltd., L.P.

v. Phoenix Pictures, Inc*., 373 F.3d 296, 306 (2d Cir. 2004); *see also Amable v. New Sch.,* 551 F.

Supp. 3d 299, 318–19 (S.D.N.Y. 2021) (same).  Unjust enrichment "lies as a quasi-contract

claim" that "contemplates 'an obligation imposed by equity to prevent injustice, in the absence

of an actual agreement between the parties.'"  *Georgia Malone & Co. v. Rieder*, 973 N.E.2d 743,

746 (N.Y. 2012) (citation omitted).  Notably, "[u]nder New York law, a plaintiff may not recover

under quasi-contract claims such as unjust enrichment where an enforceable contract governs the

same subject matter."  *Goldberg v. Pace Univ.*, 535 F. Supp. 3d 180, 198 (S.D.N.Y. 2021).

To prove a defendant was enriched, "a plaintiff must show that the defendant actually

received a benefit" that is both "specific and direct."  *Caro Cap., LLC v. Koch*, No. 20-CV-6153,

—F. Supp. 3d—, 2023 WL 1103668, at *9 (S.D.N.Y. Jan. 30, 2023) (quoting *Regnante v. Sec. &

Exch. Offs.*, 134 F. Supp. 3d 749, 772 (S.D.N.Y. 2015) then *Kaye v. Grossman*, 202 F.3d 611,

616 (2d Cir. 2000)).  "For the benefit to be 'direct,' the defendant must either be put in

---

[3] Dixon briefly asserts that "UMR processed, reviewed, and responded to" the appeals
Hudson filed.  (Pls' Opp. 7.)  While "[a] party whom a condition precedent benefits may waive
such a condition," *Roldan v. Second Development Services, Inc*., No. 16-CV-2364, 2018 WL
1701938, at *7 (E.D.N.Y. Mar. 30, 2018), Plaintiff stops short of making a waiver argument.
And regardless, Dixon's statements about Defendant's responses appear nowhere in the TAC.
(*See generally* TAC.)

possession of the benefit, or otherwise obtain financial relief because of the benefit." *Id.*

(quoting *Buchwald v. Renco Grp.*, 539 B.R. 31, 49 (S.D.N.Y. 2015)).

Defendant argues that it has not actually received a benefit, no less a "direct" one, as a

result of Hudson's services. (Def's Mem. 11–12; Def's Reply 8–9.) Hudson's response rests on

two allegations, which it largely restates in its opposition: (1) that "UMR is unjustly enriched by

being compensated from the Plan funds, while not complying with its legal obligations to

Hudson," (TAC ¶ 60); and (2) that "UMR's compensation is partially based on a percentage of

money that it 'saves' the fund," an amount "determined based on the difference between a billed

amount . . . and the amount actually paid," (*id.* ¶ 61; *see also* Pls' Opp. 10).

Accepting those allegations as true, as the Court must at this stage, they are insufficient to

demonstrate a "specific and direct" benefit to Defendant. *See Caro Cap.*, 2023 WL 1103668, at

*9. As Hudson notes, "the discharge of the obligation the *insurer* owes to its insured" may

constitute a "direct" benefit. (Pls' Opp. 8 (emphasis added) (quoting *Emergency Physician

Servs. of New York v. UnitedHealth Grp., Inc.*, No. 20-CV-9183, 2021 WL 4437166, at *12

(S.D.N.Y. Sept. 28, 2021)). But Hudson's allegations as to Defendant are more speculative.

They at most amount to a pass-through benefit theory that Defendant—the Plan administrator—

may later get a cut of the Benefit Plan's own financial relief. (*See* TAC ¶ 60, 61.) Even then, the

TAC does not specifically tie that potential compensation to savings from this transaction. (*Id.*)

Courts in the Second Circuit have rejected similar theories as too indirect to state a claim. For

example, in *M+J Savitt, Inc. v. Savitt*, No. 08-CV-8535, 2009 WL 691278 (S.D.N.Y. Mar. 17,

2009), the court dismissed a claim that a plaintiff's loan to a third party unjustly enriched the

defendant by potentially (but not definitively) removing the defendant's obligation to "make

similar payments." *Id.* at *10. The only "specific and direct" benefit—the loan—was conferred

to the third party alone, not to the defendant. *Id*.; *see also Kaye*, 202 F.3d at 616 (overturning unjust enrichment verdict where the plaintiff "offered no evidence demonstrating that [the defendant] actually received any portion of the loan [conferred to a third party], nor did [plaintiff] show that the loan relieved [the defendant] of any financial obligations for which she would have been responsible"); *Buchwald*, 539 B.R. at 49–51 (finding "a benefit is direct when it or its functional equivalent is in the defendant's possession" and granting defendant judgment as a matter of law because the purported benefit "[could] not be traced directly back to anything transferred away from [the plaintiff]").  Hudson's allegations here similarly fail to demonstrate that Defendant is currently "in possession of the benefit" or that it otherwise "obtain[ed] financial relief" by denying a claim for Hudson's services.  *See Caro Cap*., 2023 WL 1103668, at *9.[4]

Hudson's unjust enrichment claim also fails for a second, independent reason: an allegedly enforceable contract "governs the same subject matter."  *See Goldberg*, 535 F. Supp. 3d at 198.  This Court previously dismissed Plaintiffs' unjust enrichment claim for a similar reason, finding it was duplicative and "premised on the same factual allegations as those supporting Plaintiffs' [breach of contract] claim[]."  *Hudson Neurosurgery*, 2022 WL 902107, at *5 (citing *Cooper v. Anheuser-Busch*, LLC, No. 20-CV-7451, 2021 WL 3501203, at *19 (S.D.N.Y. Aug. 9, 2021) (collecting cases)); *see also Stanley v. Direct Energy Servs., LLC*, 466 F. Supp. 3d 415, 430–31 (S.D.N.Y. 2020) ("[W]here the validity of a contract that governs the subject matter at issue is not in dispute, and the claimant alleges breach of the contract, the claimant cannot plead unjust enrichment in the alternative under New York law").

---

[4] Because Plaintiffs fail to allege a direct benefit conferred to Defendant, the Court need not address whether "the services for which [Plaintiff] seeks compensation were performed at [Defendant]'s behest."  (*See* Def's Mem. 13–16.)

Plaintiffs attempt to plead around this problem by alleging an unjust enrichment claim only as to Hudson, which "did not have a written contract with UMR." (*See* TAC ¶ 45–46.)  But "both [] New York state courts and [courts] in this district have consistently held that claims for unjust enrichment may be precluded by the existence of a contract" which governs the dispute "even if one of the parties to the lawsuit is not a party to the contract."  *Am. Med. Ass'n v. United Healthcare Corp.*, No. 00-CV-2800, 2007 WL 683974, at *10 (S.D.N.Y. Mar. 5, 2007); *see also Thor 680 Madison Ave. LLC v. Qatar Luxury Grp. S.P.C.*, No. 17-CV-8528, 2022 WL 836890, at *10 (S.D.N.Y. Mar. 21, 2022) (same); *L. Debenture v. Maverick Tube Corp.*, No. 06- CV-14320, 2008 WL 4615896, at *13 (S.D.N.Y. Oct. 15, 2008), *aff'd sub nom. L. Debenture Tr. Co. of New York v. Maverick Tube Corp.*, 595 F.3d 458 (2d Cir. 2010) ("[A] claim for unjust enrichment, even against a third party, cannot proceed when there is an express agreement between two parties governing the subject matter of the dispute.").[5]  Here, Hudson alleges the existence of a contract governing the dispute and that "Dixon and UMR both agreed to [be] bound by [its] terms."  (TAC ¶ 21.)  Hudson's unjust enrichment claim accordingly turns on Defendant's alleged obligation "to pay the hospital in full for . . . the necessary treatment to the insurer's enrollees," (*id*. ¶ 57), an obligation that exists solely by virtue of Dixon's insurance contract.  Hudson's requested damages, moreover, do not line up with the measure of UMR's alleged unjust compensation.  Hudson seeks $668,856—the "reasonable value of the [] [s]ervices provided"—but states that UMR receives only a portion of that amount as a "benefit" for saving

---

[5] The limited exception to this rule does not apply here.  "[C]ourts have permitted plaintiffs to pursue both unjust enrichment and breach of contract claims" only if "there is a bona fide dispute as to whether a relevant contract exists or covers the disputed issue." *Marshall v. Hyundai Motor Am.*, 51 F. Supp. 3d 451, 471 (S.D.N.Y. 2014) (collecting cases).  Here, however, Hudson's unjust enrichment claim depends entirely upon equitable obligations arising from a contract to which Defendant is allegedly bound.

the Plan money.  (*Id.* ¶¶ 65, 66, 70.)  That damages figure instead equals the amount that Hudson

claimed from Defendant ($709,341.00) minus the amount UMR paid to Hudson ($40,484.55).

(*See id*. ¶¶ 15, 19.)  And that first amount—$709,341.00—is the same amount Defendant

allegedly owes "pursuant to [the] terms [of the] contract."  (*See id*. ¶ 30.)

Therefore, because the "matter is controlled by contract, [Hudson] has no valid claim for

unjust enrichment," *Marshall*, 51 F. Supp. 3d at 471 (quotation marks omitted), "and it is

appropriate to dismiss [the] claim," *Statler v. Dell, Inc.*, 775 F. Supp. 2d 474, 485 (E.D.N.Y.

2011); *see also Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 54 (2d Cir.

2011) ("In light of the agreements among the parties, the district court properly dismissed [the

plaintiff]'s claims that it was entitled to recover [ ] for unjust enrichment . . . .").

### III.  Conclusion

For the reasons stated above, Defendant's Motion To Dismiss is granted.  Plaintiffs have

already amended their complaint once after being put on notice of its deficiencies.  *See Hudson*

*Neurosurgery*, 2022 WL 902107, at *6 (rendering "the first adjudication of Plaintiff's claims on

the merits").  "To grant Plaintiffs leave to amend would be allowing them a 'third bite at the

apple,' which courts in this district routinely deny."  *Binn v. Bernstein*, No. 19-CV-6122, 2020

WL 4550312, at *34 (S.D.N.Y. July 13, 2020) (collecting cases), *report and recommendation*

*adopted*, 2020 WL 4547167 (S.D.N.Y. Aug. 6, 2020); *cf. Nat'l Credit Union Admin. Bd. v. U.S.*

*Bank Nat'l Ass'n*, 898 F.3d 243, 257–58 (2d Cir. 2018) ("When a plaintiff was aware of the

deficiencies in his complaint when he first amended, he clearly has no right to a second

amendment even if the proposed second amended complaint in fact cures the defects of the first.

Simply put, a busy district court need not allow itself to be imposed upon by the presentation of

theories seriatim." (alteration, footnote, and quotation marks omitted)).  Plaintiffs' claims are

therefore dismissed with prejudice.

The Clerk of Court is respectfully directed to terminate the pending Motion, (Dkt. No. 53), and to close this case.

SO ORDERED.

Dated:    September 28, 2023
          White Plains, New York

_____
          KENNETH M. KARAS
          United States District Judge